OPINION OF THE COURT
FISHER, Circuit Judge.
Anthony Bizzell appeals from his conviction and sentence for one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Bizzell argues that the District Court committed reversible error when it refused to suppress an inculpatory statement Bizzell made to an officer prior to the issuance of appropriate warnings, as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Bizzell also raises a procedural challenge to his sentence and a constitutional challenge to the application and validity of 18 U.S.C. § 922(g)(1). Because we find the Miranda violation was reversible error, we will not reach these latter arguments.
I.
We write exclusively for the parties who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.
In the early morning of February 24, 2007, three Philadelphia police officers, George Marko, Joseph Kelly, and Brandon Bryant, responded to a radio call of gunshots and observed Anthony Bizzell standing near the scene holding a beer. Marko got out of the car to talk to Bizzell, who then fled. The officers gave chase, eventually catching Bizzell in an alleyway. Officer Marko indicated to his fellow officers that he had seen Bizzell pull a gun from his waistband. The officers tackled Bizzell and restrained him. The officers recovered a gun from the scene of the arrest. In the course of the struggle, Bizzell sustained injuries to his face and mouth, which required medical treatment.
On May 8, 2007, a grand jury in the Eastern District of Pennsylvania returned a one-count indictment against Bizzell, charging him with possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Bizzell pleaded not guilty. Prior to his jury trial, Bizzell filed a motion to suppress a statement that he made *789 to a police officer after he had been arrested and while being treated in a hospital for the injuries he received as a result of that arrest. Specifically, he asserted that he had not been informed of his rights pursuant to Miranda and that, therefore, the officer had taken that statement in violation of his Fifth and Sixth Amendment rights.
The District Court held a suppression hearing on December 3, 2007. At the hearing, Officer James O’Connell of the Philadelphia Police Department testified that on February 24, 2007, at around 2:00 a.m., he transported Bizzell to the Germantown Hospital. O’Connell stated that while Bizzell was at the hospital, Bizzell asked O’Connell what he was being arrested for, to which O’Connell responded, “You had a gun.” (App.50-51.) O’Connell then asked him, “What were you doing with a gun?” (App.51.) Bizzell answered that he always carried a gun. (Id.) O’Connell did not record this information, but later relayed his conversation with Bizzell to one of the arresting officers, Officer Joseph Kelly. At no point prior to this statement did O’Connell or any other police officer inform Bizzell of his Miranda rights.
The District Court, ruling from the bench, denied Bizzell’s motion to suppress the statement. It explained:
As far as the hospital goes, my holding is that [Bizzell] was not undergoing custodial interrogation. That he asked the question, what he was arrested for, and the officer told him. And then he volunteered the statement of [sic] that he always carries a gun. Even if the officer asked him, well, you know, you’re being arrested for carrying a gun, why do you carry a gun? That’s not a custodial interrogation, in my view. So the motion to suppress will be denied.
(App.60.)
At trial, the Government introduced the testimony of the three arresting officers, which was neither in perfect agreement nor in irreconcilable dispute. Among the testimony was Officer Marko’s statement that, during the pursuit, he saw Bizzell pull a gun from his waistband which prompted him to yell “gun” to his partner. Marko also testified that he saw Bizzell bring “the gun behind him like this, and point[] it back towards [Marko].” (App. 134-35.) Neither of the other two officers stated that they saw a gun until after Bizzell was forced to the ground. Bryant testified that when he tackled Bizzell, he “heard something hit the ground, like a metal type hitting the ground.” (App.201.) Marko also testified that the officers struggled with Bizzell “for approximately a minute, trying to get the gun out of his hand.” (App.135.) Marko and Kelly testified that, after Bizzell was handcuffed, Kelly located a gun in the nearby vicinity and unloaded it, although Bryant did not see Kelly pick it up.
The Government then introduced the testimony of Officer O’Connell, which mirrored the testimony he had given at the earlier suppression hearing. Specifically, O’Connell told the jury:
While we were at the hospital, [Bizzell] asked why he was being locked up. And I told him it was because he had a gun. And I asked him, why would he have a gun? And he said, I always have a gun, because I was shot before.
(App.209-10.)
The theories presented by the defense centered on various alleged inconsistencies in the arresting officers’ testimony: neither Bryant nor Kelly observed the gun prior to Bizzell being tackled by the officers and Bryant did not observe where Kelly picked up the gun. Additionally, the defense set forth a “second incident” theory based on Marko’s testimony in an earlier state court proceeding that the encounter took place at 11:45 p.m. on February *790 28, 2007, and various corroborating notes in the arrest report.
In the course of jury summations, the Government argued:
And, then we have the defendant actually admitting to having the gun.... [P]erhaps he thought that, by the fact that he was having — having a gun for self defensive purposes, it was okay to have the gun. It’s impossible for us to know. None of us are in the defendant’s head. But, the point is that he admitted to the police that he had the gun, which again is consistent with all of the other evidence in this case.
(App.280-81.) In its rebuttal, the Government displayed the arrest memo to the jury, stating:
There it is in black and white, as they say. This was the memo that was written by [Officer] Marko. Clearly it’s been recorded by the police. The defendant states to Police [Officer] O’Connell on P.W. 1400 that he always carries a gun because he’s been shot before, loaded with seven rounds in the chamber.
(App.294-95.)
After deliberating for a little over an hour, the jury returned a guilty verdict against Bizzell. Following sentencing, Bizzell filed this timely appeal.
II.
The District Court had jurisdiction under 18 U.S.C. § 8231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).
“We review a denial of a motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court’s properly found facts.” United States v. Shabazz, 564 F.3d 280, 286 n. 4 (3d Cir.2009) (internal quotation marks and select punctuation omitted). We review the record de novo to determine whether a constitutional error is harmless. Arizona v. Fulminante, 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
III.
Bizzell argues that the District Court committed reversible error under Miranda by refusing to suppress the statement he made to O’Connell in which Bizzell indicated that he always carried a gun because he had been shot before. He contends that this constitutional error was not harmless beyond a reasonable doubt and, as a result, this Court must vacate the judgment of conviction and sentence. In response, the Government, despite having argued to the contrary in the District Court, concedes on appeal that it was, in fact, constitutional error to have admitted the statement at trial. Nevertheless, according to the Government, this Court should hold that the error was harmless in light of the rest of the evidence presented against Bizzell.
A.
Although the Government concedes the Miranda violation on appeal, we will address it briefly here.
“Under the prophylactic rules announced in Miranda, a statement made by a suspect in response to custodial interrogation after he or she has elected to remain silent is inadmissible at trial.” United States v. Brownlee, 454 F.3d 131, 146 (3d Cir.2006). The Miranda safeguards are triggered when a person who is in custody is subjected to interrogation. Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Because Bizzell was under arrest at the time of the questioning, he was clearly in “custody” for Miranda purposes. Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). The Government also concedes, and the record supports, that no Miranda warnings were *791 issued prior to the conversation in question.
The only question, then, is whether O’Connell’s question was an “interrogation.” An interrogation includes “any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Innis, 446 U.S. at 301, 100 S.Ct. 1682. Though the District Court held that O’Connell’s question regarding the gun was merely responsive to Bizzell’s question regarding his arrest and thus not an interrogation, we disagree. In Brownlee we held that an officer asking “Why would you do something dumb like this?” and “With a gun?” constituted an interrogation. We reasoned, “It is difficult to imagine questions that are more likely to evoke an incriminating response — that is, a ‘statement amounting to admissions of part or all of the offense’ ” 454 F.3d at 146-47 (quoting Innis, 446 U.S. at 301 n. 5, 100 S.Ct. 1682) (select internal punctuation omitted). Although Bizzell initially asked O’Connell what he was being arrested for, O’Connell, after answering that question, expressly asked him why he had a gun. This latter question was reasonably likely to — and, in fact, did — elicit an incriminating response from Bizzell.
Accordingly, we hold that O’Connell’s questioning was a custodial interrogation. Because Bizzell had not been issued any Miranda warnings, his statements regarding his possession of the gun were not admissible against him at trial. The District Court, therefore, erred in denying Bizzell’s motion to suppress the statement.
B.
Because the District Court erred in admitting into evidence a statement obtained in violation of Miranda, we must reverse unless we can say that the admission of the defendant’s statement was harmless. Brownlee, 454 F.3d at 148. In making this determination, we apply the familiar test set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for assessing the harmlessness of a constitutional error. Under Chapman, the Government must “prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” 386 U.S. at 24, 87 S.Ct. 824; Brownlee, 454 F.3d at 148 (applying the harmless-beyond-a-reasonable-doubt test to a Miranda violation). “The question ‘is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.’ ” Gov’t of V.I. v. Davis, 561 F.3d 159, 165 (3d Cir.2009) (quoting United States v. Korey, 472 F.3d 89, 96 (3d Cir.2007)).
In this case, we cannot conclude that the erroneous admission of Bizzell’s statement was harmless. The analysis here closely tracks our opinion in Brownlee, 454 F.3d at 131. In Brownlee, the defendant was indicted for his alleged involvement in a carjacking. His defense at trial was mistaken identity. The Government’s principal evidence against the defendant was the testimony of four eyewitnesses, whose identification was bolstered by statements made by the defendant prior to receiving Miranda warnings. Our holding that the error in admitting the statements was not harmless turned on two principles: first, that the statements went to the heart of the government’s evidence against the defendant; and second, that the government’s reliance on those statements belied any argument that their admission did not influence the jury.
Here, Bizzell’s statement that he always carried a gun went directly to the only *792 issue in dispute at trial — whether Bizzell was in possession of a gun — and seriously undermined Bizzell’s defense. The Government attempts to avoid this observation by arguing that the statement was a “minor factor” in the case and that the verdict “did not rest upon” its admission. This analysis does not satisfy the strict standard set by Chapman. Chapman requires us to conclude that there is no “reasonable possibility that the evidence complained of might have contributed, to the conviction.” Chapman, 386 U.S. at 24, 87 S.Ct. 824 (emphasis added). If the erroneously admitted statement was a factor, albeit even a minor one, in the jury’s verdict, then the error was not harmless and we must reverse.
Additionally, the Government’s reliance on Bizzell’s statement in its jury summation and rebuttal is a strong indicator that the Government intended the jury to give weight to the statement. As we noted in Brownlee, “[I]t is difficult for the Government to argue with effect that the admission of the confession did not contribute to [the defendant’s] conviction when it submitted just the opposite view to the jury during the trial.” 454 F.3d at 148.
In arguing that it has satisfied its burden, the Government relies on United States v. Shabazz, 564 F.3d 280 (3d Cir.2009), but that case is readily distinguishable. In Shabazz, we held that a robbery defendant’s pre-Miranda statement that he had “plenty more” cash than the amount found in his wallet was harmless in light of the overwhelming amount of evidence presented against him at trial, including surveillance video footage and the testimony of several of the defendants’ accomplices. Id. at 286. Unlike in Shabazz, there was no forensic evidence or civilian third-party testimony admitted against Bizzell. Rather, the Government’s case largely hinged on the officers’ credibility, which the defense argued was undermined by various inconsistencies in the officers’ testimony.
Perhaps more importantly, the statement in Shabazz was merely evidence from which a jury might infer the defendant’s participation in criminal activity. Here, Bizzell’s statement that he always carried a gun was tantamount to a confession where the only issue at trial was Bizzell’s possession of a gun. Thus, in distinguishing Shabazz, we are cognizant of the Supreme Court’s admonition that “[a] confession is like no other evidence.” Fulminante, 499 U.S. at 296, 111 S.Ct. 1246. As the Court explained, “[T]he defendant’s own confession is probably the most probative and damaging evidence that can be admitted against him.” Id. (internal quotation marks omitted). “Certainly, confessions have a profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so”; accordingly, a reviewing court must “exercise extreme caution before determining that the admission of the confession at trial was harmless.” Id. (internal quotation marks omitted); see also Broumlee, 454 F.3d at 148 (rejecting the government’s harmless error argument and referring to Fulminante).
We cannot conclude from this record that the admission was harmless. Bizzell’s statement that he always carried a gun was a highly influential piece of evidence that spoke directly to the core issue in the Government’s case. Surely aware of its power, the Government reiterated the statement to the jury in its summation and rebuttal. The Government has thus failed to meet its burden of demonstrating that the District Court’s error in admitting the statement did not contribute to the jury’s verdict.
IV.
For the foregoing reasons, we will vacate the conviction and sentence, reverse *793 the District Court’s order denying the motion to suppress the statement, and remand for proceedings consistent with this opinion.