NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3594
_____

UNITED STATES OF AMERICA

v.

STEVIE BUCKUSE,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 10-cr-00722-001)
District Judge: Honorable Stanley Chester
_____

Submitted Under Third Circuit L.A.R. 34.1(a)

July 9, 2012

Before: FUENTES, HARDIMAN and ROTH, *Circuit Judges*

(Opinion Filed:  September 6, 2012)

FUENTES, *Circuit Judge*.

    In this appeal, we are asked to determine two issues: first, whether the District

Court committed reversible error in finding that Stevie Buckuse voluntarily and

knowingly waived his *Miranda* rights; and second, whether the District Court abused its

discretion in denying Buckuse's motion for a mistrial.  For the reasons set forth below,

we will affirm.

## I.

Because we write primarily for the parties, we set forth only the facts and procedural history relevant to our conclusion.

On June 4, 2009, Stevie Buckuse sold Kendal Davis 20 grams of crack cocaine for $800. Davis was a member of the Grape Street Crips, a violent gang based in Newark, New Jersey. Fellow gang members Marquis Works and Rasheed Smith introduced Davis to Buckuse. Unbeknownst to Buckuse and the others, Davis was also an FBI informant who had obtained money from his handler, Special Agent Egan, to purchase the drugs. During the deal, Davis wore an audio/video recording device and transmitter so that Agent Egan could listen in on the transactions.

Eight days later, on June 12, 2009, Davis planned to purchase approximately 100 grams of crack from Buckuse. However, plans fell through when the FBI learned that Davis's status as an informant might have been compromised and directed him not to leave his residence. Davis and Buckuse instead agreed to complete the deal "next time." App. 143.

Two months later, on August 12, 2009, Davis and Smith went to Buckuse's apartment to execute another crack transaction. Since Buckuse was not home, Davis and Smith agreed to try again the next morning. The following day, Davis met with Agent Egan to obtain the recording device, transmitter, digital scale, and $4,000 in buy money. Davis then met with Smith and Buckuse, and drove with them to the intersection of 18th Avenue and 18th Street in Newark to complete the deal. There, Buckuse sold Davis 95 grams of crack at a price of $34 per gram, for a total of $3,230.

In April 2010, Newark Police arrested Buckuse pursuant to a federal warrant and transported him to FBI headquarters. Once in FBI custody, Buckuse was taken to an interview room and held for approximately 20 minutes. Agent Egan testified that, during this time, he verbally advised Buckuse of the charges against him and read him his *Miranda* rights. It is uncontested that, at some point, Buckuse signed an advice of rights form and gave a self-incriminating statement, essentially confessing to the crimes for which he was charged.[1]

Buckuse was charged with one count of conspiracy to distribute at least 50 grams of crack, in violation of 21 U.S.C. § 846, and two counts of distributing crack, in violation of 21 U.S.C. § 841. Each count carried a mandatory minimum sentence of 10 years' imprisonment. Buckuse pleaded not guilty on all counts and elected a jury trial.

Before trial, Buckuse moved to suppress his post-arrest statement on the grounds that he was not properly advised of his *Miranda* rights before he was interrogated. The Government opposed the motion. At the suppression hearing, Agent Egan testified that he arrested Buckuse around 10:00 p.m. and drove him directly to FBI headquarters. He also testified that he began questioning Buckuse at 10:56 p.m., after having taken care of "some procedural things." App. 35. While Agent Egan could not explain the time gap between Buckuse's arrival at FBI headquarters and his interrogation, Agent Egan was

---

[1] Per Agent Egan's testimony at the suppression hearing, Buckuse confessed to dealing drugs during this interview, and admitted that he remembered the drug deals at issue in this case. Agent Egan also testified that Buckuse told him that he had a drug connect in the area of 18th Avenue and 18th Street—the location of the drug buy on August 19, 2009. App. 246.

"absolutely" sure that he interrogated Buckuse only after reading him his *Miranda* rights. *Id.* The District Court credited Agent Egan's testimony over that of Buckuse and denied the motion.

Months before trial, the Government moved *in limine* to introduce audio- and video- recordings of all crack transactions and attempted crack transactions between Davis—the informant—and Buckuse. App. 84. Buckuse did not oppose the motion and did not object pre-trial to admitting any portion of the recordings. *Id.* During the trial, the Government played a recording that referenced "three straps" and possession of a car that "was reported stolen." App. 119. On direct examination, Davis explained that the word "straps" referred to "guns." *Id.* The Government also asked Davis whether the guns or stolen car had anything to do with Buckuse. Davis testified that they did not.

Buckuse's attorney objected, requested a sidebar, and demanded a mistrial. He contended that the reference to guns was "highly prejudicial" and characterized the mention of a stolen car as "hearsay and . . . irrelevant." App. 120. The prosecutor insisted that the Government was only trying to provide context to "avoid any confusion." App. 121. The prosecutor also suggested that "a limiting instruction . . . would cure any prejudice." *Id.* The District Court agreed, adding that "not explaining words which they are using creates more confusion for the jury than explaining them." *Id.* It further concluded that while these statements were "not in furtherance of the conspiracy," the testimony "in context" was not "so prejudicial as to warrant a mistrial." App. 122. In its limiting instruction, the District told the jury that "the defendant in this case is in no way, shape or form charged with anything involving those particular issues .

4

. . . [Y]ou are not to use the evidence of the straps or the cars in any way, shape or form as evidence against this defendant. . . . [I]t's just idle chitchat." App. 123-24.

After a three-day trial, the jury returned a guilty verdict on all three counts. The District Court sentenced Buckuse to 10 years' imprisonment on each count, to be served concurrently. Buckuse timely appealed.

## II.

### A.     The Motion to Suppress

In reviewing a district court's denial of a motion to suppress, we apply a clear error standard to the court's factual findings and a plenary standard to the application of the law to the facts.[2] *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007) (citation omitted). We will accept the court's factual findings so long as "the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety." *United States v. Marcavage*, 609 F.3d 264, 285 (3d Cir. 2010) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)). Even where a District Court has improperly admitted evidence, reversal is not warranted where the error is harmless—that is, where "the prosecution can show that the evidence is so overwhelming that it is beyond a reasonable doubt that the verdict would have been the same without the improper evidence." *United States v. Shabazz*, 564 F.3d 280, 286 (3d Cir. 2009) (citation and internal quotation marks omitted).

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

Having reviewed the parties' submissions and the District Court's reasons for denying Buckuse's motion to suppress, we conclude that the District Court did not err in finding that Buckuse knowingly and voluntarily waived his *Miranda* rights, and that any purported error would have been harmless in light of the overwhelming amount of other evidence before the jury.

At the suppression hearing, the District Court reconciled "a factual dispute regarding the timing of [the] *Miranda* warnings," which turned on the credibility of the two witnesses: Agent Egan and Buckuse. After having "examined the demeanor of both witnesses," the trial judge concluded that Agent Egan's account of the interrogation proceedings was "clear and unequivocal and . . . credible." App. 37-38. The Court explained that any discrepancy regarding the time gap "[was] simply an indication of what the real world is like," where estimates "can be off by ten or fifteen minutes." App. 37. Further, even allowing that there was some unexplained gap between Buckuse's arrival at FBI headquarters and his execution of the *Miranda* waiver, the District Court found that no pre-warning interrogation had occurred. Because that factual finding is "plausible in light of the record," we must defer. *Marcavage*, 609 F.3d at 285.

Moreover, even were we to conclude that the District Court erred in admitting the statement, reversal would not be warranted because the harmless error standard is easily met in this case. Here, the confession "played only a minor role in the Government's case," essentially reinforcing the audio/video evidence, and Agent Egan's and Davis's testimony. *Shabazz*, 564 F.3d at 286. At trial, the recordings clearly showed Buckuse discussing prices with Davis and "hand[ing] him the drugs." App. 298. In addition, both

6

Agent Egan and Davis testified and positively identified Buckuse as the seller during the crack transactions. On the whole, this evidence—and not Buckuse's admission—was "the heart of the Government's case," which "overwhelmingly pointed to [Buckuse's] guilt." *Shabazz*, 564 F.3d at 287. Thus, "any purported error flowing from the denial of the suppression motion and the admission of [Buckuse's statement] was harmless." *Id.* at 286.

## B.     The Motion for Mistrial

"We review the denial of a motion for a mistrial based on a witness's allegedly prejudicial comments for an abuse of discretion." *United States v. Riley*, 621 F.3d 312, 335-36 (3d Cir. 2010) (quoting *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005)). On review, we consider three factors: "(1) whether [the witness's] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury; (2) the strength of the other evidence; and (3) curative action taken by the district court." *Id.* at 336 (internal quotations omitted) (alteration in original). Where a limiting instruction is provided, the defendant must show that the testimony was so prejudicial that it devastated the defendant's case and was incurable by anything short of a mistrial. *Lore*, 430 F.3d at 207.

As the record reflects, the District Court did not abuse its discretion in denying Buckuse a mistrial. Though Buckuse argues that the recordings and Davis's testimony explaining them "created a real potential for jury confusion," and that "only a grant of a mistrial could have cured sufficiently the prejudicial risk in this case," Appellant's Br. 13-14, we disagree. Buckuse has offered no evidence that the jury was unable to follow

7

the instruction, or that the testimony was so devastating that it was incurable by anything other than a mistrial. *See Lore*, 430 F.3d at 206; *Riley*, 621 F.3d at 335. Davis's single reference to guns and a stolen car "cannot be characterized as either pronounced or persistent." *Riley*, 621 F.3d at 336. Moreover, the audio/video evidence and other implicating testimony during trial was "sufficient to outweigh any possible prejudice [Davis's] statements may have inflicted on [Buckuse]." *Id.* at 337. Finally, the District Court's instructions, which were clear and explicit that the jury must not consider the testimony referencing guns or a stolen car as evidence against Buckuse, were sufficient "to have cured any potential prejudice." *Id.* Therefore, we will affirm.

## III.

For the foregoing reasons, we will affirm the final judgment of conviction and sentence imposed by the District Court.