**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1199

_____

UNITED STATES OF AMERICA

v.

ROBERT SMITH,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cr-00395-001)
District Judge: Hon. Mitchell S. Goldberg

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 19, 2025

Before: BIBAS, MONTGOMERY-REEVES, and AMBRO, *Circuit Judges*

(Filed: September 22, 2025)

_____

OPINION*

_____

BIBAS, *Circuit Judge*.

Federal prisoner Robert Smith attacked his fellow inmate Michael Hughes with a shank.

Cameras filmed the assault and its aftermath from three different angles. At a jury trial, the

_____

  *  This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

government called some witnesses, but the video footage was at the heart of the case. Smith was convicted of assault with a dangerous weapon with intent to do bodily harm and possession of contraband in prison and sentenced to 125 months' imprisonment. 18 U.S.C. §§ 113(a)(3), 1791(a)(2), (b)(3). On appeal, he challenges his convictions four ways, but all fail.

We review the District Court's application of the rules of evidence for abuse of discretion, its legal conclusions de novo, and Smith's unpreserved arguments for plain error. *United States v. Womack*, 55 F.4th 219, 234 (3d Cir. 2022); *United States v. Chabot*, 793 F.3d 338, 341–42 (3d Cir. 2015); *United States v. Fulton*, 837 F.3d 281, 289 (3d Cir. 2016).

First, Smith objects that the District Court improperly let three government witnesses describe the video footage even though the jury had already seen it. A lay witness may opine only on matters "rationally based on the witness's perception" and "helpful to [the jury in] clearly understanding the witness's testimony or [in] determining a fact in issue." Fed. R. Evid. 701(a), (b).

All three witnesses stayed within those bounds. The first had watched the footage more than thirty times. A witness who has reviewed footage extensively may explain the subtleties that the jury might not catch. *United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015). And here, the witness highlighted details that the jurors would likely have missed on their own, like the layout of the floor where the assault happened, the location of Smith's cell, and the identities of the guards and inmates captured on camera. So the narration was proper. True, the government also asked him to opine on whether he saw something in Smith's hand in one of the videos. But defense counsel objected, the court

2

promptly sustained the objection, and the witness did not answer the question. There was no violation of the rule.

The second and third witnesses had responded to the assault in real time. A lay witness may narrate events on video "in which [the witness] himself took part." *United States v. Shabazz*, 564 F.3d 280, 287 (3d Cir. 2009) (emphasis omitted). These witnesses pointed out themselves and other inmates in the video, describing where each person was. So there was no abuse of discretion.

Second, Smith argues that by letting Hughes plead his Fifth Amendment privilege and so avoid testifying, the District Court interfered with Smith's right to put on a defense. That claim fails too. Away from the jury, the District Court held a hearing at which Hughes declined to answer where he was on the date of the assault, whether he knew Smith, and whether Smith had stabbed him. The court reasonably concluded that Hughes's answers to those questions (and others that might flow from them) could help the government prosecute him in connection with the assault. That is all the court had to find to excuse him from testifying to protect his Fifth Amendment privilege. *See Salinas v. Texas*, 570 U.S. 178, 183–84 (2013); *United States v. Lowell*, 649 F.2d 950, 963 (3d Cir. 1981).

Third, Smith claims that, in its closing argument, the prosecution improperly flagged Hughes's failure to testify and likened the assault to a murder. Because Smith never raised this objection below, we review only for plain error. But there was no error, let alone a plain one. Defense counsel made Hughes's absence a theme of her closing, arguing that the government could not carry its burden of proof without his testimony and thus opening the door. On rebuttal, the prosecutor "responded reasonably … to defense counsel's

3

attacks," noting that one can convict without the victim's testimony, as when murder victims are by definition unable to testify. *United States v. Young*, 470 U.S. 1, 12 (1985). That was proper.

Finally, Smith argues that the District Court's errors cumulatively deprived him of a fair trial. But he never raised this claim below either. In any event, since none of the first three claims showed an error, his cumulative-error claim fails too. *Alvarez v. Boyd*, 225 F.3d 820, 824–25 (7th Cir. 2000). Zero plus zero plus zero still equals zero. We will thus affirm.