604 A.2d 1090

**COMMONWEALTH of Pennsylvania**

**v.**

**Jason CULMER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1991.

Filed March 18, 1992.

John A. Ryan, Philadelphia, for appellant.

George Leone, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before DEL SOLE, BECK and HUDOCK, JJ.

BECK, Judge:

Appellant Jason Culmer was convicted by a jury of aggravated assault and possession of an instrument of crime for shooting William Parker with a shotgun. He was sentenced to seven to twenty years for aggravated assault and a concurrent term of imprisonment for the weapons charge. We find no merit to this appeal and affirm the judgment of sentence.

The evidence upon which appellant was convicted established the following. The victim William Parker and his friends, Freda Murray, Dwayne Culbreth, and Culbreth's girlfriend Kenya, were driving home from the movies and stopped to drop Kenya off at her home. While Culbreth walked Kenya to her door, Parker and the others remained

with the car. Another car pulled up behind them and began harassing Parker and demanding that he move the car. As soon as Culbreth returned, Parker drove away but the second car followed. Finally, both cars stopped at the intersection of Gratz and Wingahocking and Parker and the driver of the other car got out. As Parker and the other driver exchanged words, a crowd began to gather.

Moments later, from out of the crowd, a man approached Parker carrying a green plastic trash bag which concealed a sawed-off shotgun.[1] The man was later identified as appellant, Jason Culmer. Appellant thrust the barrel of the gun against the side of Parker's stomach and looked Parker in the face. At first Parker thought appellant was attempting to rob him. Appellant apparently pulled the trigger but the gun did not fire at that point and Parker heard only a "click". Parker grabbed the barrel of the gun with both hands and shoved it away from him. He turned and ran a short distance up Gratz Street. As Parker turned to see if appellant was following him, he heard a loud boom and felt the pain of a shotgun wound in his arm and chest. Appellant was about fifteen feet away still holding the concealed weapon. After the shot was fired, appellant fled.

Culbreth, who was close-by and witnessed the entire event, raced over to Parker. The group rushed Parker to the hospital. Parker, although badly hurt, did not lose consciousness. The police were able to interview him and Culbreth almost immediately in order to obtain a description of the assailant. Both Parker and Culbreth recognized appellant from the neighborhood. Each had seen him on several occasions before the night of the shooting. Parker supplied police with the following detailed description of appellant: "black male, about 25 years old, five-ten, medium build, high haircut like a box and he had a white T-shirt on, tank top, shirt with straps, ... and a couple of missing teeth in his mouth". Both Culbreth and Parker had noticed

1. The record does not reveal any connection between appellant and the first carload of people with whom Parker argued.

the teeth missing from the front of appellant's mouth since the first time they had seen him in the neighborhood.

In addition to this description, the police also had information received from an unidentified man at the hospital that the assailant's name was "Jason Coleman" and that he could be found in the 1800 block of Brunner Street. As a result, the police went to Brunner Street where they found appellant standing on the steps of 1833 Brunner. He matched the description given by the witnesses, except that he was wearing a sweatshirt-type jacket, which the police thought unusual given the warmth of the summer night. When the police approached appellant, he said his name was Jason Culmer and as he spoke they noticed that he was missing two of his front teeth. Underneath the jacket appellant was wearing a white tank-style T-shirt.

Appellant was taken to the hospital where the victim Parker was being treated for his wounds. Parker identified Culmer as his assailant "without hesitation". At the hospital, Culbreth also identified appellant as the man he saw shoot Parker.

In his defense, appellant presented the testimony of a friend Eugene Joyner, who testified that appellant had been with him immediately prior to the shooting. They had been together at Joyner's house, which was near the corner where the shooting occurred. Just after appellant left Joyner's house, Joyner saw appellant walking towards the corner, empty-handed. Joyner noticed the crowd, went to the corner and saw that Parker had been shot. However, Joyner said that appellant was not present because he had already gone off in another direction at the time of the shooting. The thrust of Joyner's testimony was that it was impossible for appellant to have shot Parker since he had no weapon when Joyner saw him just minutes before the shooting and that, in any case, he was not near the victim when the shooting occurred.

Appellant raises several challenges to his conviction. First, he argues that there was insufficient evidence on which to base a conviction. He also alleges that the trial

court erred when it refused to allow the defense to cross-examine William Parker regarding two juvenile delinquency adjudications and one pending adult criminal case in order to demonstrate bias on the witness' part. Next, appellant argues that the trial court erred in allowing the police officer who interviewed witnesses at the hospital to testify regarding the information which led him to the 1800 block of Brunner Street. Further, appellant cites instances of prosecutorial misconduct which he claims entitle him to a new trial. Finally, appellant alleges that trial counsel was ineffective in its presentation of a defense on his behalf. These claims lack merit.

 Appellant's challenge to the sufficiency of the evidence need not detain us long. Clearly, the only contested element of the Commonwealth's case was the identity of the assailant. The fact that Parker was shot at close range with a sawed off shotgun and severely injured could not be nor was it seriously contested. The victim in this case positively, consistently and unwaveringly identified appellant as the person who shot him with the concealed shotgun. Culbreth corroborated Parker's description and identification. Each described the gunman with great specificity. Everything about appellant's appearance matched the description originally given to the police.

Moreover, both Parker and Culbreth had seen appellant several times before in the neighborhood. Although they did not know his name, they were familiar with him. Thus, their positive identification was not, as appellant asserts, based on a "brief glimpse". The positive identifications at the hospital occurred a short while after the assault and were "without hesitation."

Our standard of review for challenges to the sufficiency of the evidence is limited. Viewing all the evidence at trial, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth, we must determine whether the trier of fact could have found that each element of the offense was proven beyond a reasonable doubt. *Commonwealth v. French,* 396 Pa.Super. 436,

578 A.2d 1292 (1990). We conclude that on this record, it cannot reasonably be argued that this standard has not been met.

■ Appellant further argues that he is entitled to a new trial because the trial court prevented him from cross-examining the victim, William Parker, regarding two delinquency proceedings and an adult criminal case. At the time of the incident the juvenile matters were pending and the adult criminal charge had not yet been brought. By the time of trial the juvenile matters were closed and the adult criminal charge had been brought and was open. Appellant does not specifically articulate how the fact that Parker had two open juvenile cases at the time he was shot would arguably have an impact on the reliability of his immediate identification of appellant. Appellant further contends that, due to the pendency of the adult criminal case, Parker "may have had a motive to testify against appellant", and that therefore the trial court impermissibly restricted cross-examination which could expose possible bias. In the context of this case, we conclude that the trial court's ruling, even if error, does not entitle appellant to a new trial.

■ As a general rule, defense counsel must be permitted to cross-examine a Commonwealth witness on possible favorable treatment or expectations of such favorable treatment in exchange for testimony for the prosecution. Failure to allow cross-examination to reveal possible bias of this nature is error and will require a new trial unless the error can be shown to have had no impact on the outcome of the case. *See Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986); *Commonwealth v. Jennings*, 405 Pa.Super. 590, 592 A.2d 1370 (1991); *Commonwealth v. Blassingale*, 391 Pa.Super. 395, 571 A.2d 426 (1990). The principle upon which this rule is premised is that the jury should have the opportunity to consider information concerning possible ulterior motives on the part of the witness in order accurately to assess the witness' credibility.

In the instant case appellant argues that Parker's juvenile delinquency adjudications which were open and pending at the time of the shooting but closed by the time of trial could establish a possible ulterior motive for Parker's testimony against appellant. He does not explain how this is so. In order to accept appellant's hypothesis, it would be necessary to conclude that at the time Parker described appellant to the police and later positively identified him from his emergency room stretcher, Parker was motivated by a desire to receive favorable treatment from the Commonwealth vis-a-vis his pending delinquency proceedings. Moreover, it would be necessary to speculate that Parker's identification of this particular defendant as opposed to any other potential suspect was done with an eye towards currying favor with the prosecution. In our view, the reasonable potential for drawing such inferences is weak at best.

The same weakness infects appellant's argument with respect to the adult criminal charge which was pending at the time of trial. After Parker identified appellant he was charged as an adult criminal on a drug charge. At trial, therefore, Parker merely continued to maintain that which he had asserted all along; that is, that appellant was his assailant. The possibility that he was influenced by the hope of deals with the Commonwealth on the pending adult charge is remote indeed given this sequence of events.

We are aware that our Supreme Court has found error where the trial court impermissibly restricted the cross-examination of an assault victim on pending juvenile charges which were instituted subsequent to the stabbing and the victim's identification of the defendant. *Commonwealth v. Borders*, 522 Pa. 161, 560 A.2d 758 (1989). *Borders* instructs that cross examination of the witness on the criminal charges was proper even though those charges were filed after the victim witness identified the defendant. On the other hand, where the inference of possible bias is as tenuous, indeed farfetched, as it is in this case and where the identification of the defendant is as unequivocal and

immediate as it is in the instant case, we confidently can conclude that any error in restricting cross-examination was harmless beyond a reasonable doubt.

Our conclusion is reinforced by the fact that Parker's testimony, and his identification and description of appellant was corroborated in detail by Culbreth. Thus, Parker's testimony was not the sole basis upon which the jury could have found that appellant was the perpetrator. *Contrast Commonwealth v. Ocasio*, 394 Pa.Super. 100, 104 n. 5, 574 A.2d 1165, 1168 n. 5 (1990). This court has found that a trial court's error in restricting cross-examination aimed at exposing alleged bias can, in particular circumstances, be harmless beyond a reasonable doubt. *See Commonwealth v. Jennings, supra*, 592 A.2d at 1374–1375; *Commonwealth v. Nolen*, 390 Pa.Super. 346, 568 A.2d 686 (1989). The error complained of here was harmless beyond a reasonable doubt.

■ Appellant also alleges that the trial court erred in allowing Officer Bernard to testify that he received information at the hospital from an unidentified man which led him to appellant's street address where appellant was eventually arrested. The information at issue was received from a man too intimidated to identify himself to police but who told the officer that the assailant's name was "Jason Coleman" and could be found in the 1800 block of Brunner Street. In our view, this testimony falls squarely within the recognized exception to the rule against hearsay which permits testimony offered to explain a course of conduct or fill a gap in the narrative which would otherwise be left unexplained. *See Commonwealth v. Palsa*, 521 Pa. 113, 555 A.2d 808 (1989); *Commonwealth v. Blair*, 394 Pa.Super. 207, 575 A.2d 593 (1990); *Commonwealth v. Rivera*, 409 Pa.Super. 120, 597 A.2d 690 (1991).

■ The decision whether to admit statements of out-of-court declarants which explain the course of conduct leading to arrest is entrusted to the sound discretion of the trial court. The trial court is charged with weighing the preju-

dicial impact of such statements against the value and relevancy of the statements in accounting for subsequent police conduct. *Commonwealth v. Palsa*, 521 Pa. 113, 178, 555 A.2d 808, 811 (1989) ("[A] balance [must] be struck between avoiding the dangers of hearsay testimony and the need for evidence that explains why police pursued a given course of action. This balancing process is governed by the sound discretion of the trial court, and, as with other evidentiary decisions, the trial court's decision will be upheld on appeal unless there has been an abuse of that discretion.") (emphasis added).

In the instant case, the trial court correctly concluded that the prejudicial impact of the contested testimony was de minimus and that the statement was admissible to explain why Officer Bernard went to Brunner Street looking for appellant. Officer Bernard's arrival at the home where appellant was placed under arrest would have been inexplicable without some reference to the information he received at the hospital regarding appellant's possible whereabouts.

More importantly, in light of the other identification evidence in the instant case, the complained-of statement was merely cumulative of highly persuasive and incriminating testimony. Two eyewitnesses, both of whom knew appellant by sight, gave exceptionally detailed, uniform and emphatic descriptions of appellant and identified him as the shooter shortly after the assault and at trial. Thus, this is not a case which calls for the exclusion of "course of conduct" testimony based on its overwhelmingly incriminating nature. We do not find an abuse of discretion in the trial court's decision to admit this testimony.

We also find appellant's claims of prosecutorial misconduct lacking in merit. Specifically, appellant alleges that the prosecutor made inflammatory and improperly prejudicial remarks in her closing argument and during trial and that she impermissibly alluded to inadmissible testimo-

ny.[2] In assessing these claims we note that the prosecutor's language must be viewed in the context of the entire trial and all the evidence presented. *Commonwealth v. Smith,* 490 Pa. 380, 386, 416 A.2d 986, 989 (1980). While the prosecutor may not deliberately seek to prejudice the jury or stigmatize the defendant to such an extent that the jury can no longer deliberate dispassionately on guilt or innocence, every objectionable remark will not require a new trial. Only statements by the prosecutor which have the "unavoidable effect" of prejudicing the jury will require reversal. *Commonwealth v. Jones,* 391 Pa.Super. 292, 310, 570 A.2d 1338, 1348 (1990).

We have thoroughly reviewed the portions of the prosecutor's closing argument which appellant cites as reversible error. We do not agree that these portions represent improper comment by the prosecutor regarding her own personal belief of the eyewitnesses' credibility. Read in context, these remarks are merely the prosecutor's argument suggesting that the complainant had no motive to lie regarding the identity of his assailant and emphasizing to the jury that the complainant had suffered substantial injury as a result of the assault. The prosecutor's statements neither overstepped the bounds of legitimate argument nor inflamed the jury.[3]

**2.** Appellant also argues that it was improper for the prosecutor to seek to have Parker display his wounds to the jury. This claim of error has not been preserved for review. There was no objection at trial when the court permitted Parker to show the jury the extent of his injuries, nor was this issue raised in post-verdict motions. Moreover, given that the Commonwealth was required to establish that the assault on Parker tended to cause "serious bodily injury" which constitutes "a substantial risk of death" or a "serious, permanent disfigurement", a reasonable demonstration of the extent of Parker's injury was well within the trial court's discretion to permit. 18 Pa.C.S.A. §§ 2301, 2710(a)(1) (Purdon 1983).

**3.** Appellant also alleges in his brief that the prosecutor improperly elicited testimony from Culbreth that he was "approached by an unnamed person regarding his intention to testify at trial". In fact, such testimony was never elicited. Rather, on re-direct examination, in an attempt to permit the jury to comprehend Culbreth's evident discomfort on the witness stand, the prosecutor asked Culbreth if he was "scared" to be in court because some people had "approached

■ Finally, we conclude that the prosecutor did not overstep the bounds of proper argument when she fleetingly referred to the fact that the police left the hospital on the night of the shooting armed with descriptions of the appellant supplied by Parker, Culbreth, and Freda Murray, who was an occupant in the car Parker was driving. Murray did not testify at trial.[4] The prosecutor did not comment upon the content of Murray's description nor did she specifically argue that it constituted corroboration of the identification testimony. Moreover, the trial court repeatedly warned the jury that their memory and view of the trial evidence must govern its deliberations and that counsel's arguments and comments did not constitute evidence. *See Commonwealth v. Scarpino*, 494 Pa. 421, 431 A.2d 926 (1981). In light of the foregoing, no new trial is warranted on this claim.

■ Appellant further argues that the trial court erred in admitting the shotgun pellets and wadding removed from the victim's wounds into evidence at trial because the chain of custody with regard to them had not adequately been established. This argument is likewise without merit. This matter is, of course, committed to the trial court's discretion which will not be reversed absent abuse of discretion. Physical evidence may be admitted at trial without demonstrating to an absolute certainty the precise chain of custody. *Commonwealth v. Hudson*, 489 Pa. 620, 630, 414 A.2d 1381, 1387 (1980). Here, the shotgun pellets were removed from Parker's arm by a physician who testified at trial. They were marked with a specimen number and a patient number and subsequently picked up at the hospital by a police detective who later identified them at

him". Culbreth, however, answered "No". He stated instead that he didn't want to be in court because he "didn't want to have anything to do with it" because "all this is new to me". Thus, the witness' answers did not disclose anything prejudicial to appellant. There is no basis for a new trial in this attempted line of questioning.

4. Murray was sixteen years old at the time of trial and was attending high school in Meridian, Mississippi. Thus, the trial court found that she was unavailable to testify. The court also found that since her identity and whereabouts were made known to the defense, she was equally available to both the defense and the prosecution.

trial. This chain of custody was sufficiently strong to give rise to the reasonable inference that the pellets introduced at trial were those removed from Parker's body. As such they were properly admitted.

Finally, appellant asserts the ineffectiveness of trial counsel in the following areas: 1) failure to request a missing witness charge; 2) failure to request a jury charge that Officer Bernard's "hearsay" statements could not be considered evidence of guilt; and 3) failure to present an alleged alibi witness.

■■■ It is settled that counsel's stewardship at trial is presumptively effective. In order to prevail on an ineffectiveness claim, appellant bears the burden of proving that the alleged omission by counsel had arguable merit in the first place. If it did, this court must then inquire whether counsel's actions were reasonably designed to effectuate the client's interest. Finally, counsel's error or omission must be shown to have prejudiced appellant. *Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

■■■ Appellant claims that trial counsel was ineffective for failing to seek a missing witness instruction for Freda Murray, an occupant of the car, and the unidentified man at the hospital. The missing witness instruction allows the jury to draw an unfavorable inference from the absence of a potential material witness who is available to only one party in the case. Therefore, in order for the instruction to be invoked appropriately against the Commonwealth the witness must be available only to the Commonwealth. Further, the witness' testimony must not be merely cumulative. *Commonwealth v. Manigault*, 501 Pa. 506, 509, 462 A.2d 239, 241 (1983). The witnesses at issue here do not meet either of these prerequisites. Clearly, the one witness who remained "unknown" at the time of trial was unavailable to both parties since his identity was never disclosed. Murray, on the other hand, was available to both parties, since her identity was made known to appellant. Finally, it was

neither alleged nor shown that either witness had material evidence to offer which would be anything more than cumulative. Under these circumstances, counsel cannot be ineffective for failing to seek an instruction to which appellant was not entitled.

Appellant also argues that trial counsel was ineffective for failing to seek a limiting instruction regarding the use to which the jury could put Officer Bernard's "course of conduct" testimony, i.e., the testimony on how the officer was directed to Brunner Street. In our view, while such an instruction, if requested, would have been in the trial court's discretion to give, the failure of counsel to request the charge cannot be said to have affected the outcome of the trial. As discussed thoroughly above, the eyewitness testimony identifying appellant as the gunman was exceptionally strong and the Commonwealth did not rely on the "course of conduct" testimony to corroborate its case. In light of the testimony given by Parker and Culbreth, we conclude that the fact that the jury was not specifically told that it could not use the complained-of portion of Officer Bernard's testimony as substantive evidence did not prejudice appellant.

Lastly, we address appellant's claim that trial counsel was ineffective for failing to call a witness, Kenneth Woodard, whom appellant met while incarcerated. Woodard claimed to have been at the scene of the crime. He purportedly would have testified that appellant was not the assailant in Parker's shooting. At the post-trial hearing to assess the merits of this claim of ineffectiveness, both Woodard and trial counsel testified. Woodard stated that at first he was reluctant to testify at appellant's trial because he was in jail on charges of his own and did not need the additional burden. However, after speaking again to appellant in prison, Woodard professed his sudden willingness to testify on appellant's behalf.

Trial counsel testified at the post-verdict hearing that when he first interviewed Woodard prior to trial, Woodard

could neither confirm nor deny whether appellant was the assailant the night of the shooting. From this interview, trial counsel concluded that Woodard would not be helpful to appellant's case.

It was only after trial that Woodard decided that he could confirm that the shooter had been someone other than appellant. Trial counsel can not be ineffective for failing to call a witness who before trial was unsure he would support the defense position. We agree with the trial court which found at the post-trial hearing that counsel exercised "logical, sensible" judgment in his decision not to call Woodard.

Judgment of sentence affirmed. Jurisdiction relinquished.