J-S48031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL LESLIE DASZKIEWICZ, | |
| Appellant | No. 1968 MDA 2016 |

Appeal from the Order Entered November 3, 2016
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0007829-2015

BEFORE:  OTT, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:          **FILED SEPTEMBER 26, 2017**

Appellant, Michael Leslie Daszkiewicz, appeals from the order denying his motion to dismiss the assault and harassment charges against him, after the trial court declared a mistrial *sua sponte*.  He claims double jeopardy. The court maintains that its order declaring a mistrial was properly based on manifest necessity.  We affirm.

We derive the facts of the case from the trial court's order (dated November 3, 2016 and filed November 18, 2016), its supplemental statement (Trial Court's Rule 1925(a) Opinion, 1/25/17), and our independent review of the record.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On the day of the incident at issue, October 26, 2015, Appellant invited the victim to visit him at a hotel room where he was staying in York, Pennsylvania. The two had an on-again-off-again friendship which included a physical relationship. She accepted.[1]

Both parties testified at trial. While they differed sharply on the details of the actual incident, (in particular, Appellant's claim that the victim was the initial physical aggressor), there was a basic agreement that on the day in question, after the victim arrived, the two argued at first, became romantic, and then argued again. Part of the argument may have been about what the victim considered to be Appellant's imprudent spending habits. Part of it may have been about the status of their relationship. In any event, the argument got heated. Appellant threatened to have a female cousin beat up the victim. He also threatened to call the victim's mother and make disparaging remarks about her daughter's virtue.

The argument became physical (in Appellant's version, because the victim began beating him). The victim testified that, at some point, she fled

---

[1] In Appellant's version of events, he was merely facilitating a ride home from a bar for the victim, who, he claimed, lacked cab fare. (*See* N.T. Trial, 9/15/16, at 107-08). However, we need not address this discrepancy, which has no direct relevance to our disposition. We note that Appellant does not dispute that the victim went to his room, at his direction, and stayed there, not home to her mother. (*See id.* at 108).

into the bathroom, but Appellant followed her.[2]  She said that he punched her about five times in the face and pushed her down, which was when she fell, twisting her left leg, and injuring her knee.  (*See* N.T. Trial, 9/15/16, at 61-66).

At some point, Appellant called 911.  York City patrol officer Shawn M. Kelly, dispatched by radio to a "domestic dispute, assault," met Appellant at the hotel room door.  Appellant demanded that the victim, still in the bathroom, be removed.  Officer Kelly went to the bathroom, where the victim could not move because of the pain and swelling to her dislocated knee.  She thought it was fractured.  Officer Kelly stayed with her until EMT personnel transported her to the hospital.

The parties stipulated at trial that the victim had suffered a strain of the mid-collateral ligament as well as a patella subluxation and lateral femoral condyle bone bruise (injuries to her left knee and knee cap).[3]  (*See* N.T. Trial, 9/15/16, at 83).  A SAFE[4] nurse's examination of the victim

---

[2] Appellant testified at trial that the victim yanked **him** into the bathroom, and as the two struggled, "she ran into the vanity and fell backwards." (N.T. Trial, 9/15/16, at 110).  On appeal, Appellant concedes, or reports without denial, the victim's testimony that he followed her into the bathroom and began to punch her.  (*See* Appellant's Brief at 6).

[3] Appellant concedes that the victim lost twenty weeks of work because of complications of the injury to her knee.  (*See* Appellant's Brief, at 7).

[4] Sexual assault forensic examiner.

confirmed bumps and bruises to the head and face as well.  The victim also had a bleeding split lip, a spider web bruise to the elbow and other bruises on the arms and torso.[5]

At trial, it developed that another York police officer, Officer Ebersole[6] had arrived on the scene in a separate vehicle.  While Officer Kelly concentrated on the victim and getting medical help for her, Officer Ebersole stayed with Appellant.

Officer Ebersole's involvement did not become evident until Officer Kelly first mentioned it in direct testimony at trial, in response to a general question from the prosecutor:

Q.  When you went there, did you go along or take anyone else?

A.  No.  Officer Ebersole was with me at the time.

Q.  Were you in the same vehicle?

A.  No, sir.  We came separate.

(**Id.**, 9/15/16, at 85).

_____

[5] Appellant conceded at trial that he had slapped the victim's face several times, claiming justification, and noting his concern that her attack might have aggravated pre-existing injuries to his neck.  (**See** N.T. Trial, 9/15/16, at 110).

[6] Officer Ebersole's first name is not given or readily apparent from the record before us.

On cross-examination by defense counsel, Officer Kelly testified further:

Q. And other than your initial interaction with [Appellant], you didn't, you know, sit down and take a full statement from him?

A. No. Once I started dealing with [the victim] my partner, . . . Officer Ebersole, had come out to talk to [Appellant].

Q. So you would agree it was your partner who probably had the most interaction with [Appellant] that evening?

A. After the initial contact, correct.

(*Id.* at 101-02).

Officer Ebersole's name did not appear in Officer Kelly's written report of the incident, or apparently in any other discovery furnished to the defense.

After both sides had rested, defense counsel asked the trial court for a missing witness instruction in a sidebar conference. (*See id.* at 118). After an on-the-record discussion, the trial court took the request under advisement but first directed the parties to determine the availability of Officer Ebersole. (*See id.* at 122) ("I don't care who produces him, and if he can't be produced, I'll revisit your request for an instruction.").

The next day, the prosecutor reported to the trial court that Officer Ebersole had suffered severe injuries in an unrelated collision with a drunk driver, and was on indefinite medical leave. (*See* N.T. Trial, 9/16/16, at 125). Defense counsel, in addition to the request for the missing witness instruction made the day before, raised the new argument of a *Brady* violation, arguing prosecutorial misconduct.[7] (*See id.*, at 126). Counsel asked for a dismissal. (*See id.*).

It bears noting that in seeking a dismissal, defense counsel initially argued that "I don't think a curative instruction can fix it because my client has already testified." (*Id.* at 127). Counsel also argued against a mistrial ("I don't think a mistrial will cure it."). (*Id.*).

Nevertheless, a few minutes later, in the same on-the-record conference, counsel stated, "The **only remedy** at this time, Your Honor, **would be to issue a mistrial** on prosecutorial misconduct, which I would not want that [sic]."). (*Id.* at 130) (emphases added).

Shortly thereafter, the trial court declared a mistrial, *sua sponte*. (*See id.* at 131). Defense counsel filed a motion to dismiss. On November 3, 2016, after a hearing, the trial court denied the motion to dismiss, citing

---

[7] *Brady v. Maryland*, 373 U.S. 83 (1963).

manifest necessity as the basis for the mistrial.[8]   This timely appeal

followed.[9]

Appellant presents one compound question for our review:

> [Should] Appellant's charges . . . be dismissed based on double jeopardy because the trial court erred in declaring a mistrial *sua sponte* when (1) Appellant did not request a mistrial as a remedy, (2) there were no "extraordinary and striking circumstances" making a mistrial a manifest necessity, and (3) there were less drastic alternatives to a mistrial, including Appellant's request for a missing witness instruction[?]

(Appellant's Brief, at 4) (quotation marks in original).

Our standard and scope of review for a challenge to the denial of a

motion to dismiss on double jeopardy grounds following a declaration of a

mistrial *sua sponte* is well-settled.

> It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision.  Where there exists manifest necessity for a trial judge to declare a mistrial *sua sponte,* neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial.
>
> In **Commonwealth v. Diehl**, 532 Pa. 214, [216–17], 615 A.2d 690[, 691 (1992)], our Supreme Court, when considering whether manifest necessity for the trial court's *sua sponte* declaration of a mistrial existed, stated:

_____

[8] The trial court also found that the motion was not frivolous and declared that [Appellant] could file an interlocutory appeal on the issue.  (**See** N.T. Hearing, 11/03/16, at 7-8; **see also** Order, dated November 3, 2016).

[9] Appellant filed a timely court-ordered statement of errors on December 28, 2016.  The trial court filed an opinion on January 25, 2017.  **See** Pa.R.A.P. Rule 1925.

Since Justice Story's 1824 opinion in **United States v. Perez**, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on [whether] there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions.

Pennsylvania Rule of Criminal Procedure [605(B)] provides that:
When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

In accordance with the scope of our review, we must take into consideration **all the circumstances** when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant.

**We do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. Rather, varying and often unique situations arise during the course of a criminal trial . . . [and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated . . . .**

- 8 -

> [***Commonwealth v.***] ***Leister***, 712 A.2d [332,] at 335 (quoting ***Illinois v. Somerville***, 410 U.S. 458, 462 [ ] (1973)); ***Commonwealth v. Morris***, 773 A.2d 192 (Pa. Super. 2001).

***Commonwealth v. Kelly***, 797 A.2d 925, 936–37 (Pa. Super. 2002) (some citations and internal quotation marks omitted) (emphases added).

Here, after independent review, in consideration of all of the circumstances in this case, we conclude under our standard and scope of review, that the trial court had more than ample reason to find manifest necessity. Its decision to declare a mistrial *sua sponte* was well within the scope of its judicial discretion, and free of legal error.

At the outset, we note that both Appellant's statement of questions involved and his argument fail to comply with our Rules of Appellate Procedure. ***See*** Pa.R.A.P. 2116; Pa.R.A.P. 2119.

Specifically, in his "Question(s) Involved" [sic], Appellant makes three more or less inter-related claims, but fails to state concisely any other claims of error to be resolved. (***See*** Appellant's Brief, at 4). "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

Furthermore, in the argument section of his brief, Appellant fails to develop a coordinated argument in support of the three claims made in the statement of questions involved. (***Compare*** "Questions Involved" at 4, with Appellant's Brief, at 13-20). Rather, Appellant substitutes a string of loosely associated legal principles, without developing a corresponding argument

that applies those general principles to the claims of error expressly raised, or to any companion claims fairly suggested by them.

We could find all of Appellant's issues waived on this basis alone. However, in the interest of judicial economy we decline to do so. Instead, to the extent possible, we will review the merits of the primary issues Appellant purports to raise, and explain why under our standard of review the trial court's decision is proper and legally correct. Accordingly, we will focus on the repeated themes of Appellant's principal claims without attempting to respond to each and every undeveloped claim in the remainder of his brief.

Appellant's first sub-issue, (mistrial not requested), is easily resolved. There is no question that Appellant did not formally request a mistrial (even though defense counsel may have hinted at it). But the assertion that the mistrial was not requested is irrelevant. As acknowledged by Appellant, the trial court declared a mistrial *sua sponte*.[10] (***See*** Order, 11/03/16 (filed 11/18/16), at 1; ***see also*** N.T. Trial, 9/16/16, at 132). There is plainly no requirement that a trial court obtain the permission of a defendant to declare a mistrial *sua sponte*. Lacking support in law or the facts, Appellant's claim is frivolous. His first claim fails.

Next, Appellant postulates that there were no "extraordinary and striking circumstances," to constitute a manifest necessity for a mistrial *sua*

---

[10] Appellant acknowledges this fact in the question itself. (***See*** Appellant's Brief, at 4).

*sponte*. (Appellant's Brief at 4; *see also id.* at Appendix B, Statement of Errors, 12/28/16). However, other than raising the issue, as noted, Appellant utterly fails to address, let alone develop, an argument for this claim. (*See id.* at 12-20). Accordingly, Appellant has waived this issue. *See Commonwealth v. Wilson*, 147 A.3d 7, 14 (Pa. Super. 2016) (noting appellant waives issue on appeal if he fails to present claim with citations to relevant authority or develop issue in meaningful fashion capable of review).

Moreover, Appellant's mere citation of the catch phrase, with no further development, ignores the much broader context of our scope and standard of review, which recognize that we do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. Rather, we afford the trial court a broad discretion to accommodate the varying and unique situations which can arise during the course of a criminal trial. *See Kelly, supra* at 936–37. Appellant's second sub-claim fails.

Appellant characterizes the third sub-issue (trial court consideration of less drastic alternatives to mistrial), as "[t]he primary issue in this appeal[.]" (Appellant's Brief, at 14). He posits two alternatives to a mistrial: a missing witness instruction, and a dismissal for prosecutorial misconduct, the purported *Brady* violation. (*See id.* at 12). Appellant's claims do not merit relief.

Preliminarily, we observe that Appellant's claim on appeal that there were less drastic alternatives to a mistrial that the trial court failed to consider stands in stark contrast to the opposite position taken by defense counsel at trial.

As already noted, defense counsel initially argued in the sidebar conference, that "I don't think a curative instruction can fix it because my client has already testified." (N.T. Trial, 9/16/16, at 127). Counsel also argued against a mistrial for a similar reason ("I don't think a mistrial will cure it[.]"). (*Id.*).

Nevertheless, a few minutes later, in the same on-the-record hearing, counsel stated, "The **only remedy** at this time, Your Honor, **would be to issue a mistrial** on prosecutorial misconduct, which I would not want that [sic][.]"). (*Id.* at 130) (emphases added). Understandably, counsel would have preferred a dismissal. We also understand the obligations of zealous advocacy. Nevertheless, counsel's insistence on appeal that there were less drastic alternatives to a mistrial stands in stark contrast to the near-categorical denial of such alternatives at trial.

Furthermore, it is beyond dispute that, contrary to the claim on appeal, dismissal of charges is not a "less drastic alternative." Appellant himself acknowledges this. (*See* Appellant's Brief, at 19).

Moreover, "[a] mere finding of willful prosecutorial misconduct will not necessarily warrant dismissal of charges." **Wilson**, **supra** at 13 (citations

omitted).  Prosecutorial misconduct is precisely what defense counsel alleged here.  (**See** N.T. Trial, 9/16/16, at 130).

Even assuming for the sake of argument that defense counsel could have proved, not merely asserted, prosecutorial misconduct, dismissal would not have been automatic or required.  It certainly would not have been "less drastic."  The trial court considered, but properly rejected, dismissal as a "less drastic alternative" to mistrial.

Appellant also complains that the trial court should have given a missing witness instruction instead of declaring a mistrial.  The trial court reasons that a missing witness instruction was not appropriate.  We agree.

The missing witness adverse inference rule may be summarized as follows:

> When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

> **Commonwealth v. Manigault**, 501 Pa. 506, 510-11, 462 A.2d 239, 241 (1983)(quotations, citations and emphasis omitted). This Court has delineated the circumstances which preclude issuance of the instruction.

> 1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

> 2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Commonwealth v. Evans*, 444 Pa. Super. 545, 664 A.2d 570, 573-74 (1995). To invoke the missing witness instruction against the Commonwealth, the witness must only be available to the Commonwealth and no other exceptions must apply. *Commonwealth v. Culmer*, 413 Pa. Super. 203, 604 A.2d 1090, 1098 (1992).

*Commonwealth v. Boyle*, 733 A.2d 633, 638–39 (Pa. Super. 1999).

Here, it is worth noting that Officer Ebersole was at least theoretically available to both parties, subject to the physical limitations his injuries and the requirements of his recuperation may have imposed. There is certainly nothing in the record and no offer of proof by Appellant that he was only available to the Commonwealth. Similarly, there is no showing that he was not available or not within the control of the Commonwealth as the party against whom the negative inference is desired. The trial court concluded that any testimony Officer Ebersole could give would be "merely cumulative." (N.T. Trial, 9/15/16, at 121).

On independent review, we agree with the trial court's assessment. There was no evidence, contrary to Appellant's claim on appeal, that Officer

- 14 -

Ebersole took any written statement from Appellant. (*See* N.T. Trial, 9/16/16, at 131). Testimony about his conversation with Appellant, on available evidence, would be merely cumulative of Appellant's statement to Officer Kelly (and his trial testimony). On our review of the record, there is nothing to suggest that any testimony Officer Ebersole could give would be either adverse to the Commonwealth or helpful to Appellant. Similarly, in the absence of any evidence to the contrary, we find that Officer Ebersole's testimony (which in context could only have been comprised of his conversation with Appellant) would have been "comparatively unimportant, cumulative, or inferior to that already presented." *Boyle*, *supra* at 638. The trial court properly found that Appellant was not entitled to a missing witness instruction.

In the face of the claims defense counsel was making, in the middle of a jury trial, with no practical way to ascertain what relevant information Officer Ebersole actually had, we conclude that the trial court properly declared a mistrial on the basis of manifest necessity.

Furthermore, the trial court **did** consider alternatives to a mistrial. The trial court entertained extensive argument from both counsel on the propriety of a missing witness instruction, as well as dismissal. (*See* N.T. Trial, 9/15/16, at 118-122). Appellant's third sub-claim does not merit relief.

Order affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/26/2017</u>