J-S50002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES BATTLE :
:
Appellant : No. 945 WDA 2018

Appeal from the Judgment of Sentence Entered May 31, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008296-2017

BEFORE: LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED OCTOBER 25, 2019**

James Battle appeals from the judgment of sentence, entered in the

Court of Common Pleas of Allegheny County, after a jury convicted him of two

counts of robbery—threatens serious bodily injury[1] and one count of

conspiracy.[2] Upon careful review, we affirm in part, vacate in part, and

remand for resentencing.

Battle's convictions stem from charges relating to the robberies of two

Pittsburgh-area Family Dollar stores.[3] On July 20, 2016, Battle entered the

───────────────────────

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[2] 18 Pa.C.S.A. § 903.

[3] The Commonwealth brought Battle to trial on four counts of robbery, two of which were *nolle prossed* after the jury failed to reach a verdict. The facts relayed *infra* concern the crimes underpinning Battle's convictions.

Family Dollar at 3300 Penn Avenue, carrying a pistol and wearing a white hooded sweatshirt, blue jeans, sneakers, a black cap and dark sunglasses. He demanded the cashier turn over the contents of the registers. Grace Ellen Sims, the store's manager, told Battle her cashier lacked the authority to do so. She opened the registers herself after Battle laid his Glock and a blue bag on the counter and threatened to shoot her. While emptying the registers, Battle stood one to two feet from Sims, where she was able to view him beneath the sunglasses. Battle then demanded Sims open the store's safe. Sims lied and said she could not. In response, Battle demanded cigarettes. Sims said she did not have the key for the cigarettes. He forced her to the floor and ordered the cashier to open the cigarette case. Battle left the Family Dollar with approximately $150 in cash and assorted tobacco products. Sims called the police as soon as Battle left. Several of the store's security cameras captured footage of the robbery.

On July 22, 2016, between 2:30 p.m. and 4:00 p.m., Battle and an accomplice entered the Family Dollar at 2020 Spring Garden Avenue. Battle approached the cashier, Christina Fredley, pointed a gun at her, and demanded money. Simultaneously, Battle's accomplice demanded the store's patrons get on the floor. Fredley complied with Battle's demand and turned over the contents of the cash register. Battle then ordered Fredley to the ground and told his accomplice to go behind the counter and grab cigarettes. Fredley was unable to view Battle's face, which was obscured by a hooded sweatshirt and sunglasses. Security cameras captured the robbery, including

footage of the perpetrator leaving the Family Dollar. The police culled a still photograph from this footage and released it on social media in an attempt to identify the perpetrator.

Prior to July 22, 2016, Jasmine Goetz gave Battle permission to use her husband's Chrysler 200 sedan in exchange for drugs. On July 22, 2016, Goetz awoke from a drug-induced stupor to discover the Chrysler 200 was missing. Her husband called demanding the return of his car. Goetz presumed Battle had the car and called him, but Battle did not answer. Goetz later saw the still photograph taken from the security footage of the July 22 robbery on Facebook, recognized Battle, and contacted the police. She told Detective Stacy Hawthorne she thought that Battle had her husband's car, that she believed he was the individual in the Facebook photo, and that she wanted the car back. Detective Hawthorne instructed Goetz to come to the police station and Goetz complied, albeit under the influence of drugs. Goetz identified Battle from a photographic lineup and stated she believed he had been driving her husband's car on July 22, 2016.

The Pittsburgh Police put out an arrest warrant for Battle, but they were unable to locate him. Detective Hawthorne later learned Battle was likely with family in Florida. Consequently, she contacted local authorities and faxed a copy of Battle's arrest warrant. Local police in Florida successfully apprehended Battle.

On January 30, 2018, Battle appeared for a three-day jury trial, the Honorable Donna Jo McDaniel presiding. At the conclusion of the

Commonwealth's case, Judge McDaniel granted Battle's motion for acquittal regarding charges of terroristic threats and criminal mischief. On February 1, 2018, the jury found Battle guilty of robbery for his conduct on July 20, 2016, and guilty of robbery and criminal conspiracy for his conduct on July 22, 2016. At sentencing on April 26, 2018, Battle's counsel and the Commonwealth agreed Battle's prior robbery conviction invoked the second strike provision of 42 Pa.C.S.A. § 9714. The court, however, stated it was *not* imposing a mandatory minimum sentence when it imposed consecutive ten-to-twenty-year terms of incarceration for Battle's two robbery convictions and no further penalty for criminal conspiracy.

On May 4, 2018, Battle timely filed post-sentence motions, which the court denied on May 31, 2018. On June 29, 2018, Battle timely filed a notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[4]

Battle raises the following issues for our review:

1. The [t]rial [c]ourt allowed the Commonwealth to present identification testimony from Ms. Goetz, who knew Mr. Battle for a short time prior to the incident and was "cracked out" when she identified Mr. Battle. Did the [t]rial [c]ourt commit reversible error by allowing her to identify . . . Battle from a surveillance video, despite her not being present at any robbery?

---

[4] Battle received one extension from the trial court in filing his statement of errors complained of on appeal and two extensions from this Court in filing his appellate brief.

2.      The Commonwealth presented testimony from Detective Hawthorne that . . . Battle fled Pennsylvania and was [a]pprehended in Florida.  Where the trial court [ruled[5]] that this evidence could not be offered to show consciousness of guilt, did the [t]rial [c]ourt commit reversible error by admitting this irrelevant, prejudicial evidence without any curative instruction?

3.      The [t]rial [c]ourt stated that . . . Battle's sentence was not mandatory, despite this being his "second-strike" violent offense under 42 Pa.C.S.[A.] § 9714.  Did the [t]rial [c]ourt abuse its sentencing discretion by not imposing the mandatory[ ]minimum sentence here?

4.      The [t]rial [c]ourt sentenced . . . Battle to an aggregate sentence of 20–40 years' state incarceration.  Did the [t]rial [c]ourt abuse its sentencing discretion by not considering all mitigating evidence, rehabilitative needs of . . . Battle, and the need to protect the public, in contravention of the Sentencing Code and fundamental norms of sentencing such that . . . Battle is entitled to a new sentence?

Brief of Appellant, at 6–7 (re-ordered for clarity).

Battle's first two claims concern the court's decisions to admit or exclude evidence.  *Id.* at 34.  Consequently, we evaluate those claims under the following, well-established standard:

When reviewing questions regarding the admissibility of evidence, our standard of review maintains the admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion.  An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record.  The comment to Rule 403 of the Pennsylvania Rules of Evidence defines "unfair prejudice" as "a tendency to suggest

---

[5] Battle's appellate counsel omitted a word in this space.  Brief of Appellant, at 6.  We have guessed at his intended meaning.

decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially."

**Commonwealth v. Seilhamer**, 862 A.2d 1263, 1270 (Pa. Super. 2004) (citations and quotations omitted).

In his first claim, Battle argues the trial court abused its discretion by allowing the Commonwealth to present Goetz's identification testimony to the jury. Brief of Appellant, at 34. He asserts the following: 1) Goetz's testimony identifying Battle as the perpetrator of the robbery from the Facebook photo constituted an impermissible lay opinion; and 2) Goetz testimony was unreliable owing to her history of drug use and motivation to testify. **Id.** at 34–43. Battle's assertions misstate pertinent facts and relevant law.[6]

_____

[6] We note with deep disfavor Battle's appellate counsel's use of **United States v. Shabazz**, 564 F.3d 280 (3d Cir. 2009), to argue for this Court's application of a four-factor "test for determining if a witness's general familiarity with an individual was reliable enough to submit that identification to the jury[.]" Brief of Appellant, at 36 (citing **Shabazz**, **supra** at 287). First, **Shabazz** is factually inapposite, as it concerns a _participant_ in a robbery who testified as a _fact witness_ regarding _other participants in that robbery_. **Shabazz**, **supra** at 287. More importantly, **Shabazz** offers no test whatsoever concerning F.R.E. 701—instead, it merely states _F.R.E. 701_ applies in _federal cases_ where witnesses are asked to opine as to the individual in an incriminating photo based on familiarity with the defendant. **See id.** ("Rule 701 is typically applied where a witness is asked to apply the defendant in an incriminating photo or video based simply on _general familiarity_ with the defendant's appearance.") (emphasis in original). Not only does counsel's test seem to be a fabrication cut from whole cloth, were such a test to exist, "this Court is not bound by decisions of federal courts inferior to the United States Supreme Court, even though we may look to them for guidance." **Commonwealth v. Huggins**, 68 A.3d 962, 968 (Pa. Super. 2013).

Preliminarily, we note "the division whether testimony constitutes fact or opinion may be difficult, for there is no litmus test for fact versus opinion." *Commonwealth v. Palmer*, 192 A.3d 85, 100 (Pa. Super. 2018) (quotation omitted). "Fact testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony." *Id.* (quotation omitted).

We dispute Battle's assertion that Goetz identified him as the perpetrator of the robberies;[7] rather, Goetz testified to her previous

---

[7] Goetz recounted identifying Battle in the still photo, in relevant part, as follows:

Q. Jasmine [Goetz], what is the photograph that I just showed you?

A. Someone in a hat.

Q: Okay. You saw this on the news; is that accurate?

. . .

A: It was on . . . the cell phone news.

. . .

Q. You recognized the person in this photo?

A. Yes.

. . .

Q. What did you say about this picture to Detective Hawthorn?

relationship with Battle, her identification of Battle in the photo police released on social media, and the circumstances that brought her into contact with the police. *See* N.T. Trial, 1/31/18, at 135–36. Contained therein was, what the trial court characterized as, "testimony . . . that she *believed* James Battle was the individual in the photograph . . . that was distributed to the media." Pa.R.A.P. 1925(a) Opinion, 1/29/19, at 6 (emphasis added). This belief constitutes opinion testimony. *See Commonwealth v. Brown*, 134 A.3d 1097, 1105 (Pa. Super. 2016) (deeming witness's belief as to individual in security footage to be opinion testimony).

As Goetz offered a lay opinion regarding the identity of the individual in the police photograph, we address the admissibility of her statement under Pa.R.E. 701, which states as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a)    Rationally based on the witness's perception;

---

A.  It resembles James Battle.

N.T. Trial, 1/31/18, at 140–41.

Goetz, in fact, never mentioned the July 22 robbery, except when prompted to do so on cross-examination. *See id.* at 145. Even then, Goetz answered defense counsel's question about the robbery only insofar as it concerned whether she saw her husband's car in the security footage, making no remarks whatsoever as to whether Battle participated in the robbery. *Id.*

(b)   Helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c)   Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

"Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." *Commonwealth v. Berry*, 172 A.3d 1, 3-4 (Pa. Super. 2017).  We have previously found it proper for a witness to offer a lay opinion as to the identity of an individual in security footage when the witness's identification is rationally based upon his or her own perception. *Compare Commonwealth v. Palmer*, 192 A.3d 85, 100–101 (Pa. Super. 2018) (admitting lay opinion concerning identity of individual in surveillance videos where "testimony about the [surveillance] videos was based upon [the witness's] perception of them, placed his subsequent actions in context, and was helpful in allowing the jury to reach a clear understanding of all his testimony.") *with Brown*, *supra* at 1105 (precluding testimony under Rule 701 where witness's identification of individuals in video was speculative).

Goetz's opinion was based on her personal experiences with Battle, her identification of Battle in the video played a critical role in understanding her subsequent interactions with the police, and none of her statements involved scientific or otherwise specialized technical knowledge, rendering her testimony admissible. Pa.R.E. 701; *see also Palmer*, *supra* at 100–101.

Consequently, the court did not err by admitting Goetz's opinion as to the identity of the individual in the security photo. ***See Seilhamer***, ***supra*** at 1270.

Battle's remaining challenges to Goetz's testimony—that it was unreliable as a result of her drug use and her underlying motivations to testify—are challenges to her credibility. ***See Commonwealth v. Boich***, 982 A.2d 102, 111 (Pa. Super. 2009) ("Under Pennsylvania law, a witness' use of alcohol and drugs historically implicated the witness' physical condition and constituted a matter of credibility for the fact finder[.]"); ***see also Commonwealth v. Culmer***, 604 A.2d 1090, 1094–95 (Pa. Super. 1992) ("[T]he jury should have the opportunity to consider information concerning possible ulterior motives on the part of the witness in order accurately to assess the witness' credibility."). Battle was afforded the opportunity to thoroughly cross examine her on both subjects. ***See*** N.T. Trial, 1/31/18, at 142–146 (inquiring as to Goetz's past heroin, Xanax, methadone, marijuana, and crack use, and desire to find husband's car as motivation to talk to police). As it is not for this Court to pass on a witness' credibility, Battle's claim consequently fails. ***See Commonwealth v. Lee***, 956 A.2d 1024, 1029 (Pa. Super. 2008) ("[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony.").

Next, Battle asserts the trial court abused its discretion by allowing the Commonwealth to "introduce irrelevant hearsay testimony through Detective

Hawthorne that . . . Battle had an outstanding warrant, was apprehended in Florida . . . and was therefore avoiding apprehension by being in Florida." Brief of Appellant, at 44. Additionally, Battle agues, beyond evincing a consciousness of guilt, evidence of Battle's arrest was irrelevant. *Id.* at 48.

"Relevance is the threshold of admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015). Pennsylvania Rule of Evidence 401 provides "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable that it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Our Supreme Court recently held evidence relevant where it explained the actions taken by police to find a defendant. *See Commonwealth v. Clemons*, 200 A.3d 441, 474 (Pa. 2019) (finding officer's testimony relevant to police action while investigating missing person's report; finding limiting instruction cured any prejudice resulting from officer intimating defendant had previously been in trouble with the law); *see also Commonwealth v. Drumheller*, 808 A.2d 893, 905 (Pa. 2002) (holding evidence relevant to prove "the chain or sequence of event that formed the history of the case" or to demonstrate "the natural development of the case.").

At trial, Detective Hawthorne stated the authorities apprehended Battle in Florida. N.T. Trial, 1/31/18, at 171. When the Commonwealth asked how Detective Hawthorne knew to look for Battle in Florida, she responded by referencing anonymous calls. *Id.* Trial counsel objected, and the court

J-S50002-19

promptly struck the offending testimony. *Id.* The Commonwealth continued to inquire as to how Detective Hawthorne knew Battle was in Florida, after which Detective Hawthorne opined "Battle knew there was a warrant for him." *Id.* Trial counsel objected to Detective Hawthorne's testimony, and the court sustained counsel's objection,[8] prompting the following exchange at sidebar:

> Ms. Werner: Your Honor, the reason for this line of questioning is to show consciousness of [flight]. Even though it is hearsay testimony it is relevant to know because it explains the course of investigation and how—why the detective looked in Florida to find the defendant[.]
>
> The Court: I don't think she can testify that he knew that there was a warrant out for his arrest.
>
> . . .
>
> Mr Munoz: Your Honor, I don't see how that is relevant. It is maybe relevant where he was arrested and how he eventually came back to Pittsburgh, but anonymous informants and confidential informants and anonymous tips, I don't see how that is admissible.
>
> The Court: She said she received information that he had family in Florida. That's why she went and looked there.

N.T. Trial, 1/31/18, at 171–72. The court then permitted Detective Hawthorne to testify that she "received information that James Battle had family in

_____

[8] Trial counsel did not state grounds for objecting, nor did the trial court state grounds for sustaining the objection. N.T. Trial, 1/31/18, at 172. The proper objection in this instance would have been raised under Pa.R.E. 602, as speculative testimony violates the requirement that a witness have personal knowledge of the matter upon which he or she is testifying. *See* Pa.R.E. 602.

- 12 -

Florida[,]" and that she "contacted local authorities," who subsequently apprehended Battle. *Id.* at 173.

Before delivering jury instructions, the court informed the Commonwealth it would not instruct the jury as to "consciousness of [guilt]" as Detective Hawthorne's testimony was based on hearsay. N.T. Trial, 2/1/18, at 224. Subsequently, the court informed the jury that they "must not consider any testimony or exhibits to which [the court] sustained an objection or which [the court] ordered stricken from the record." *Id.*

The court precluded the Commonwealth's attempt to admit speculative hearsay testimony. *See* N.T. Trial, 1/31/18, at 171. Moreover, the court instructed the jury as to their responsibility to ignore testimony made pursuant to sustained objection. *See* N.T. Trial, 2/1/18, at 224. Consequently, we cannot find the court permitted the Commonwealth to "introduce irrelevant hearsay testimony through Detective Hawthorne." Brief of Appellant, at 44; *see Commonwealth v. Naranjo*, 53 A.3d 66, 71 (Pa. Super. 2012) ("Juries are presumed to follow a court's instructions."). On the contrary, the court properly admitted Detective Hawthorne's testimony regarding Battle's arrest in Florida—without allowing reference to potential hearsay—for the relevant purpose of explaining the course of the police's investigation. *See Clemons*, *supra* at 474; *see also Drumheller*, *supra* at 905.

In his third issue, Battle asserts "the [t]rial [c]ourt erroneously found . . . Battle's sentences were not mandatory and consequently did not inform . . . Battle of the statutory implications of any future crime of violence [requiring his] sentence . . . be vacated, and he must be sentenced anew in line with the statutory requirements set forth under 42 Pa.C.S.A. § 9714." Brief of Appellant, at 30.

Battle claims the trial court failed to provide oral or written notice of subsequent convictions for crimes of violence under section 9714(a)(2), a claim implicating the legality of his sentence. *See Commonwealth v. Taylor*, 104 A.3d 479, 490 (Pa. 2014) ("[T]he concept of 'legality of sentence' encompasses more than whether a sentence is illegal because it exceeds the statutory maximum. Here, where the General Assembly established a mandatory sequential sentencing scheme that was not followed, we conclude that Appellant's challenge implicates the legality of his sentence."). Our review of the record reveals the trial court not only failed to provide Battle with oral or written notice of the penalties for future convictions, the trial court inexplicably declined to apply section 9714 to his robbery convictions as required by law. *See Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013) (permitting reviewing courts to raise issues implicating legality of sentence *sua sponte*). We address both issues herein.

The Commonwealth bears the responsibility for providing notice of its intent to invoke section 9714 prior to sentencing. 42 Pa.C.S.A. § 9714(d).

After the Commonwealth provides notice, the court is required to assess whether section 9714 applies. *See id.* ("The applicability of this section *shall* be determined at sentencing."). If section 9714 applies, the court "*shall* impose sentence in accordance with this section." *Id* (emphasis added); *see also Commonwealth v. Motley*, 177 A.3d 960, 963 (Pa. Super. 2018) ("[T]he trial court [is] statutorily required to determine, at Appellant's sentencing hearing, whether section 9714 is applicable to Appellant and, if so, to impose the mandatory terms of incarceration required by that provision."). Where section 9714(a)(1) is implicated, owing to the presence of a single, previous crime of violence, "the court *shall* give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence." 42 Pa.C.S.A. § 9714(a)(1); *see Commonwealth v. Henderson*, 938 A.2d 1063, 1067 (Pa. Super. 2007) ("the plain language of the statute is clear . . . notice is required[.]").

Prior to sentencing, the Commonwealth provided notice of its intent to invoke section 9714(a)(1), and Battle's trial counsel agreed Battle's prior robbery conviction required the imposition of a second-strike mandatory minimum sentence under section 9714. *See* N.T. Sentencing, 4/26/18, at 3 ("The second strike, Your Honor, as you're aware, makes this a minimum 10 to 20 year sentence. This [assistant d]istrict [a]ttorney requests that that [provision] under the statute be invoked. And that's what we're doing."). For reasons unclear to this Court, Judge McDaniel stated on the record "this is not

- 15 -

a mandatory sentence[,]" though she simultaneously imposed ten-year minimum sentences on both robbery convictions. *Id.* at 16. As Judge McDaniel believed she was not imposing a mandatory minimum sentence, she failed to provide Battle with oral or written notice of the penalties associated with further crimes of violence as required by section 9714(a)(1). *See* 42 Pa.C.S.A. § 9714(a)(1). Moreover, the signed orders of sentence indicate Judge McDaniel did not sentence Battle under section 9714(a)(1) as required by law. *See* Order of Sentence, 4/30/18, at 1–2; *see also Commonwealth v. Borrin*, 80 A.3d 1219 (Pa. 2013) ("In Pennsylvania, the text of a sentencing order . . . is determinative of the court's sentencing intentions and the sentence imposed.").

Accordingly, we vacate Battle's judgments of sentence for robbery[9] and remand for resentencing consistent with the dictates of section 9714, specifically requiring: (1) that Battle's judgment of sentence reflect the fact that his robbery sentences are imposed pursuant to section 9714(a)(1); and (2) that Battle be given oral and written notice of the penalties for subsequent convictions for crimes of violence under section 9714(a)(2). *See Motley*, *supra* at 963.

---

[9] Vacating Battle's judgment of sentence renders moot his fourth claim regarding the discretionary aspects of his sentence.

Convictions affirmed. Judgments of sentence for robbery vacated; judgment of sentence for conspiracy affirmed. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/25/2019